UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RICO SUN TOURS, INC.

Plaintiff

v.

EDGARD CAPELES VARGAS;
RICARDO SIERRA CASTILLO;
RICARDO RIVAS TORRES;
GERMÁN VÁZQUEZ;
WILLIAM TORRES RODRIGUEZ;
SAN JUAN HAPPY TOURS, CORP.;
UNITED TOUR GUIDES COOP OF PUERTO RICO;
UNIÓN DE TRANSPORTISTAS Y RAMAS ANEXAS, INC.

Defendants

CIVIL NO. 14-cv-01583-JAG

**DEFENDANT SAN JUAN HAPPY TOURS MOTION TO DISMISS**

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR LACK OF SUBJECT MATTER JURISDICTION**

TO THE HONORABLE COURT:

COMES NOW **Defendant San Juan Happy Tours, Corp**., (hereinafter referred to as "Defendant" or "SJHT") through its undersigned counsel, who moves to dismiss the Plaintiff's Claims for Relief in the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b) (6) and for lack of Subject Jurisdiction pursuant to Fed. R. Civ. P. 12 (b) 1.

## I. INTRODUCTION

Plaintiff Rico Sun Tours, Inc. (hereinafter referred to as "Plaintiff" or "RST"), has brought the above-captioned action

against Defendants for alleged violations of the Sherman Act, 15 U.S.C. §§ 1-2, as basis for their substantive claims for which they argue jurisdiction and venue before the United States District Court for the District of Puerto Rico, under the precept of a federal question. As all parties are residents of Puerto Rico, and all allegations relate to events taking place in Puerto Rico, the proposed federal question is the sole ground upon which Plaintiff seeks federal jurisdiction in this case. Plaintiff also argues for supplemental jurisdiction and venue over the Puerto Rico law claims in the Complaint against Defendants, seeking an injunction, treble damages for alleged negligence and tortious interference with a contract, under applicable Puerto Rico Law.

As to Defendant San Juan Happy Tours, a careful reading of Plaintiff's Complaint yields the following analysis: The Complaint fails to state a claim for which a remedy may be granted, under the cited statute, for lack of factual basis and lack of proper foundation. As there is no federal question that is plausible, there is no basis for a federal jurisdiction and venue before this Honorable Court, and thus, there is no legal basis for the exercise of supplemental jurisdiction over Plaintiff's state claims. As a consequence, the Complaint should be entirely dismissed.

## II. ARGUMENTS AND ANALYSIS

*Claim 1: Violation Of Section 1 Of The Sherman Act*

1. By way of circumstantial inference, Plaintiff claims there is a Sherman Act section 1 violation relying on four allegations, which are the following:

    a. An alleged cancellation of contracts by 10 of the 53 members of San Juan Happy Tours;

b. a private conversation allegedly held between Defendant San Juan Happy Tours operators;

c. an alleged private conversation held between RST Operation Manager Raymond Ortiz and German Vazquez (President of the Union de Transportistas y Ramas Anexas) and San Juan Happy Tours; and

d. what Plaintiff labels as an independent "protest" made by five operators of offshore excursions, as circumstantial evidence of conscious parallel conduct.

As it will be later clarified, none of these allegations, even if presumed truthful lead to the conclusion that there was an unlawful and anticompetitive agreement made by Defendants to restrain trade.

2. Other than the preceding factual allegations, Plaintiff's relevant allegations in an attempt to establish an unlawful agreement are drafted entirely in a conjectural and overly-speculative fashion, unsupported by any factual basis. For instance, we find Paragraphs 46-48, as follows:

- "46. […] Defendants agreed to the extent and scope of the conspiracy to prevent RST from offering its services to the Disney ship scheduled to arrive in San Juan On July 30 2013,[…]"

- "47. As concocted, the conspiracy consisted of impeding RST from working at the San Juan port by enjoining independent Operators, affiliated with San Juan Happy Tours, from working for RST.

- 48. As the messages exchanged clearly show, the conspiracy was formed during an assembly held on the "navy frontier" on or before July 29, 2013. At that point, the participants agreed that the purpose of the conspiracy was to prevent RST from entering and working in the San Juan port market altogether." (See Doc. 1, p. 14)

3. Plaintiff's Complaint did not include any economic factual allegations regarding market share control by any of all Defendants. In lacking such factual allegations, Plaintiff

missed an indispensable element in order to prove Market Power. Also, there is a total absence of information regarding what are the actual prices of the corresponding industry. Thus, Plaintiff failed to declare a plausible claim under the cited statute, as they have not brought before this Court any set of alleged facts establishing the elements of the cause of action that is being prayed. Plaintiff does not pose any positive assertion of what are the anticompetitive controls or attempts thereof that Defendants are exercising upon the prices of the relevant product – *offshore tours and excursions*. There is absolutely no factual pronouncement less yet of any evidence of any output shortage. Neither is there in the Complaint any averment of any other economic data to support any harm to the sector or any other economic variables. Thus, we forcibly must conclude that Plaintiff failed in providing "enough factual matter (taken as true) to suggest that an agreement was made" in violation of law. Plaintiff did not state enough facts to raise a right to relief above the speculative level.

4. Now, the so-called "Exhibit A" attached to the Complaint has not been admitted into evidence and was improperly attached as an "exhibit", for which Defendant SJHT objects. Defendant objects the admissibility of such attachment for lack of foundation, lack of authenticity; it is misleading and confusing as it puts expressions out of context; and it contains an improper characterization of participants.[1] However, it is hereby discussed *in arguendo*, that such fundamental evidence on which Plaintiff

[1] Under the rule of completeness, it is hereby requested that the entirety of the WhatsApp Chat record be produced as part of the initial disclosures in the case. Without prejudice to Defendant's right to request a protective order restricting the attachment to the Complaint labeled as "Exhibit A" or striking it from the record and to exclude such attachment to the Complaint under the Rules of Evidence, in the present motion, a brief discussion and analysis is presented in reference to its contents, for the sole purpose of setting forth the grounds to request dismissal of the complaint.

relies to prove a section 1 claim- *and all of its claims*, is characterized as a private conversation between operators of the Defendant San Juan Happy Tours. As such, it fails to prove any arrangement to do harm to RST, much less any participation of other co-defendants. From its face said conversation only proves expressly the contrary: 1) the sole participation of San Juan Happy Tours Operators within the "chat" or conversation; 2) that an agreement existed between RST and San Juan Happy Tours; 3) that San Juan Happy Tours' members would not work outside their agreement with RST; 4) that if they were going to work with RST, they had to do it outside of the pier; that San Juan Happy Tours is not going to work anymore within the cruise market until further notice. There isn't a scintilla of evidence in the conversation with regards to impeding RST from offering its services to the Disney Cruise.

5. With regards to Plaintiff's allegation that in the context of a private conversation between Raymond Ortiz, as RST Operation Manager, and William Torres, as San Juan Happy Tours President, the latter asserted being the owner of the pier or any other public space, again Plaintiff failed to expose a plausible cause of action. The fact is that the Commonwealth of Puerto Rico is undeniably the only proprietor of the piers that constitute the San Juan Port. It is the position of Defendant SJHT that the Puerto Rico Port Authority, which is the Commonwealth of Puerto Rico dependency that administers the San Juan Port is an indispensable party to the controversy raised by Plaintiff. Yet, even if we were to presume the correction of such assertion made against William Torres and/or SJHT, taken in conjunction with all the rest of the allegations in the complaint, still, Plaintiff has failed to allege plausible facts to suggest an agreement was made in violation of the cited law.

6. Moreover, the claim that SJHT President unlawfully impeded other operators to work in the San Juan Port is not consistent with the actual content of the purported "Exhibit A", which is Plaintiff's own attachment depicting Mr. Torres as expressing that operators can work with RST outside the pier.

7. Even taking all the allegations contained in the Complaint under subtitle *"the unfolding of the conspiracy through use of violence and criminal acts"* as true—which they are not--Plaintiff did not expose the existence of any sort of agreement, anticompetitive or monopolistic practice. All allegations contained therein only established: that four of the individual Defendants in their individual capacity- *Vázquez, Capeles, Torres, Rivas and Serra* - and in their own right, **were protesting,** by freely expressing that RST did not have proper permits from the Puerto Rico Tourism Company to provide excursions.[2]

8. Furthermore, with regards to the element of output shortage of the relevant product, the Complaint falls short of establishing the elements of the cause of actions presented before this Court. Only alleged in a conclusonary or conjectural fashion, the Complaint states in its Paragraph 89 the following:

> "This agreement constitutes a *per se* violation of Section I of the Sherman Act because it is a brazenly anticompetitive horizontal agreement between competitors that directly impacts consumers' ability to obtain lower excursion and tour prices and a wide array of options (reduction in output)."(See Doc. 1, at page 23.)

---

[2] A careful reading of Allegation 69 of the Complaint leads to concluding that Plaintiff admits that the members of United Tour Guides Coop of Puerto Rico and San Juan Happy Tours did not join the protest. It portrays Capeles as "*encouraging other members of United Tour Guides Coop of Puerto Rico and San Juan Happy Tours to step in and join the protest*." Therefore, those "other members" had then not participated in the protest. Otherwise, it would make no sense that someone would be encouraging them to join. (See Doc. 1, at page 18.)

However, Plaintiff's conjecture in paragraph 89 cited above is absonant and contradictory because Plaintiff's own allegations asserted in the Complaint prove exactly the opposite: the alleged reduction of output affected only the Defendants. First, operators were protesting, consecuently the output shortage included all of the Defendants- *the alleged violators of the Sherman Act* - as they were not engaging in any solicitation of passengers. In contrast, the protest did not include RST, who as Plaintiff asserts was actually working in the port under the supervision of security personnel of the *Puerto Rico Ports Authority* and of the Deputy Director of Ground Transportation of the *Puerto Rico Tourism Company*, Maritza Molina. Second, a protest does not constitute any economic conscious parallel conduct, since it is obvious that it is a First Amendment Constitutional right that does not impede or interferes with the engagement of commercial contractual relations. Thirdly, Plaintiff admits that the reason for the absence of new competitors or reduction of output is not due to Defendants actions, but to the Commonwealth of Puerto Rico's and/or its dependencies. This is reflected in paragraphs 29 thru 31 of the Complaint, below:

"29. The cruise ship passenger market, in which Defendants and Tour Coop de Puerto Rico compete, is highly concentrated. There are significant barriers to market entry that prevent other Operators from rapidly and meaningfully entering and expanding or both- in the relevant San Juan port market.

30. For example, a new Operator must obtain a franchise from the Puerto Rico Tourism Company after demonstrating the need and convenience of a new franchise. The existing San Juan port market competitors may oppose such new application through an administrative procedure that is not only contested, but is also expensive, burdensome and protracted. Overall, the procedure to obtain a new franchise to enter the San Juan port market may take five years, with no guarantee that the applicant will obtain the franchise at the end of the process.

31 Under applicable regulation, the Puerto Rico Tourism Company has the authority to freeze the consideration and concession of new franchise applications. Moreover, this regulation allows incumbent operators

(competitors of the applicant) to request the freezing of new franchises for a particular geographic region or the entire region of Puerto Rico. **Presently, the Puerto Rico Tourism Company is not considering new franchise applications for Operators wishing to enter the San Juan port malket."** (Our emphasis added, See Doc. 1, at pages 10-11)

Indictment "plus factors"[3] included in the Complaint by the Plaintiff failed to prove any conspiracy. Even assuming all the allegations contained in the Complaint's sub-part "*Defendants Capeles, Serra Rivas and Vázquez were indicted, Capeles***"** as true[4], those named Defendants acted in an obvious independent manner. Such allegation seems to be irrelevant to the controversy presented by Plaintiff in the instant case, and does not have any probative value whatsoever, and is not conducive to establishing the elements required by the Sherman Act, in order to present a claim before this Honorable Court.

9. In addition, with regards to the alleged administrative infractions, Plaintiff failed to provide details to enable the Court any examination as to determine if alleged infractions are related to antitrust conduct. On the other hand, from the face of the Complaint it is clear that no infractions were imposed to United Tour Guides Coop of Puerto Rico, San Juan Happy Tours or Tour Coop de Puerto Rico, which, as Plaintiff asserted were present the day of the alleged events.

***Claim 2: Violation Of Section 2 Of The Sherman Act***

[3] *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004) (explaining that "plus factors" are "proxies for direct evidence of an agreement")

[4] It is important to note that according to the Complaint, Mr. Serra and Mr. Rivas plead guilty only to obstruction of Justice, not to Acts of Sabotage. However, the relevance of this allegation is yet to be established by Plaintiff.

10. As noted above, Plaintiff's pleadings lack any factual allegations exposing the necessary elements to plausibly establish monopoly power, that is, to at least show that the defendant owns a dominant share of that market, or that Defendant SJHT has incurred in anticompetitive conduct or attempts to affect prices.

11. On the Contrary Plaintiff pleaded inconsistent allegations with regards to monopoly power and control of the market. Specifically, allegation number 77 asserts that the offering of offshore excursions and tours in the San Juan Port is "solely controlled" by defendants San Juan Happy Tours, United Tour Guides Coop de Puerto Rico and Tour Coop de Puerto Rico. At the same time, it is asserted in allegation 70 of the Complaint that RST manage the alleged cancellation of contracts from Defendant San Juan Happy Tours well before the arrival of the Disney Cruise as they "successfully sought the services of other independent Operators not subject to the control, direction and domination of Defendants." (See Doc. 1, at p. 20)

12. The complaint does not establish the indispensable elements upon which relief can be granted under section 2 of the Sherman Act. Consequently, this Honorable Court cannot exercise federal question jurisdiction under Sherman Act provisions. Furthermore, Claims under section 2 did not meet the plausibility pleading standards set by Twombly and Iqbal for Rule 8 (a).

13. For the reasons stated above, Defendant SJHT requests that Plaintiff's claim under the Sherman Act be dismissed with prejudice.

**CLAIMS UNDER PUERTO RICO LAW**

14. Plaintiff's claims under Puerto Rico law are presented before this Honorable Court for it to exercise supplemental jurisdiction over them. The position of SJHT is that

lacking federal question jurisdiction, for Plaintiff's failure to state a plausible claim under the Sherman Act, those claims arising under Puerto Rico Law should be dismissed without prejudice. If Plaintiff insists on those claims, Plaintiff would need to file the appropriate resource before the local court.

## III. MEMORANDUM OF LAW

### Procedural Legal Standards Under Rule 8(a).

1. Rule 8(a) requires that a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)
2. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*
3. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)
4. Without requiring at least facial plausibility, "claim[s] would survive a motion to dismiss whenever the pleadings left open the *possibility* that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Bell Atlantic Corporation, Et Al., V. William Twombly Et Al* 550 U.S. 544 (emphasis added). Such a minimal pleadings standard would render meaningless a court's "power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to

proceed." *Id.* at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 528 n.17(1983)).

5. In short, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)

**Procedural Legal Standards Under Rule 12(b)(6).**

6. Under Rule 12(b)(6), the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).

7. The Supreme Court in *Bell Atlantic Corporation, Et Al., V. William Twombly Et Al* 550 U.S. 544 held that the often "questioned, criticized, and explained away" language from its prior decision in *Conley v. Gibson*, 255 U.S. 41 (1957), that motions to dismiss under Rule 12(b)(6) should only be granted if there are "no set of facts" that could be proven to support relief, "has earned its retirement" "after puzzling the profession for 50 years." *Twombly*, 550 U.S. at 561-63.

8. "Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations set out in the complaint does not apply to conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation". *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)

9. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense. 490 F. 3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2)." *Id.*

**Substantive Legal Standards under section 1 and 2 of the Sherman Act.**

*Section 1 Elements and standard of proof*

10. "Section 1 of the Sherman Act prohibits [e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States. Ch. 647, 26 Stat. 209, as amended, 15 U. S. C. §1. While §1 could be interpreted to proscribe all contracts, see, *e.g., Board of Trade of Chicago* v. *United States*, 246 U. S. 231, 238 (1918), the Court has never .taken a literal approach to [its] language,. *Texaco Inc.* v. *Dagher*, 547 U. S. 1, 5 (2006). Rather, the Court has repeated time and again that §1 outlaw[s] only unreasonable restraints." *Leegin Creative Leather Products, Inc. v. PSKS, Inc.,* 551 U.S. 877 (2007).

11. *Twombly* stated that the facts alleged to state a claim for relief in a Section 1 case "must be enough to raise a right to relief above the speculative level." Facts must be sufficient to "nudge [the plaintiff's] claims across the line from conceivable to plausible." The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

12. Section 1 of the Sherman Act requires a showing of a tacit or express agreement to unreasonably restrain competition. *Twombly* noted that in the context of antitrust claims, a complaint must set forth "enough factual matter (taken as true) to suggest that

an agreement was made." *Twombly* explained that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."

13. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell Atlantic Corporation, Et Al., V. William Twombly Et Al* 550 U.S. 544

*Section 2 Elements and Burden of proof*

14. " The offense of monopoly under § 2 of the Sherman Act has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp*., 384 U.S. 563 (1966).

15. The Supreme Court has defined monopoly power as "the power to control prices or exclude competition." The existence of such power ordinarily may be inferred from the predominant share of the market."*Id.*

16. "[T]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

17. In *Iqbal*, the Supreme Court clarified that the *Twombly* plausibility pleadings standard

applies to "all civil actions." *Iqbal*, 129 S. Ct. at 1953.

*Rule of Reason Analysis*

18. "The rule of reason is the accepted standard for testing whether a practice restrains trade in violation of §1. See*Texaco, supra,* at 5. Under this rule, the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition. *Continental T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U. S. 36, 49 (1977). Appropriate factors to take into account include specific information about the relevant business and the restraints history, nature, and effect. *Khan*, *supra,* at 10." *Leegin Creative Leather Products, Inc. v. PSKS, supra.*

19. "Plaintiffs can demonstrate an anticompetitive effect in one of two ways. First, they can show *Actual adverse effect,* such as an increase in price, reduction in output, deterioration in quality. Second, they can show a *Potential Adverse Effect, as revealed by* market power. Plaintiffs proving this element must delineate relevant product and geographic markets and offer proof of the defendant's power. *U.S. Horticultural Supply, Inc. v Scotts Co.*, No. 04-5182, 2009 WL 89692, at *18 E.D. Pa. Jan. 13, 2009." [5]

*Per se Analysis*

20. There is a presumption in favor of a rule-of-reason standard. *Business Electronics Corporation v. Sharp Electronic Corporation,* 485 U.S. 717 (1988)

---

[5] Carrier, Michael A. (2009). *The Rule Of Reason: An empirical Update for the 21st Century.* Geo. Mason L. Rev. Vol16:4, page 830.

21. Departure from that standard must be justified by demonstrable economic effect, such as the facilitation of cartelizing, rather than formalistic distinctions. *Id*

22. Courts applying per se analysis condemn conduct based on the existence of the activity an do not consider the activity's justifications. *See.* Bus Elcs. Corp. v. Sharp Elecs. Corp. [6]

23. *Per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue, see *Broadcast Music, Inc.* v. *Columbia Broadcasting System, Inc.*, 441 U. S. 1, 9 (1979), and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason, see *Arizona* v. *Maricopa County Medical Soc.*,457 U. S. 332, 344 (1982). *Leegin Creative Leather Products, Inc. v. PSKS,* supra.

24. The Supreme Court in *Twombly* , citing previous cases, made clear that "proof of a §1 conspiracy must include evidence tending to exclude the possibility of independent action, see *Monsanto Co.* v. *Spray-Rite Service Corp.*, 465 U. S. 752 (1984); and at the summary judgment stage a §1 plaintiffs offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently, see *Matsushita Elec. Industrial Co.* v. *Zenith Radio Corp.*, 475 U. S. 574 (1986)." And with regards to parallel conduct, it was also noted in *Twombly* "that Commentators have offered several examples of parallel conduct allegations that would state a [Sherman Act] § 1 claim under this standard ... [namely,] 'parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties' ...[;]

[6] *Op cit.,* 828.

'conduct [that] indicates the sort of restricted freedom of action and sense of obligation that one generally associates with agreement.".

## IV. CONCLUSION

25. In this case, Plaintiff failed to justify the application of a *per se analysis* and a departure from the standard of *Rule of Reason analysis,* as the factual allegations in the Complaint do not show, above the speculative level, any anticompetitive conduct on the part of Defendants. In general the allegations drafted in the Complaint are devoid of economic facts – *any attempts or actual raise on prices due to any actions on the part of Defendants.*

26. Plaintiff does not expose any set of circumstances that could enable the Court an examination of economic effects of the alleged per se anticompetitive conduct by Defendants. The sub-titles in the Complaint are not more than over-speculative, unrealistic and unsensical inferences made by Plaintiff, not supported by actual factual allegations asserted in the Complaint. The alleged agreement to horizontally boycott RST- *or any alleged conscious parallel* conduct – are not substantiated by factual allegations, and thus, are not subject to the *per se* analysis.

27. Under the Rule of Reason of analysis, Plaintiff's pleadings again absolutely failed to include any factual allegations exposing the necessary elements to establish actual adverse effect – increase in price, shortage of output, or deterioration of quality.

28. With regards to the potential adverse effect test, plaintiff's pleadings are conjectures or conclusory allegations that lack any factual information in order to establish or even suggest any market power.

29. Under the alleged section 1 violation of the Sherman Act , it is clear that Plaintiff failed to established the indispensable elements upon which relief can be granted. Consequently, this Honorable Court cannot exercise federal question jurisdiction under Sherman Act provisions. In addition, Claims under section 2 do not meet the plausibility pleading standards set by Twombly and Iqbal for Rule 8 (a).

For the foregoing reasons Defendant SJHT's Motion to Dismiss should be granted and the First and Second Claims for Relief in the Complaint should be dismissed with prejudice. As to the claims raised by Plaintiff under Puerto Rico Law, the Complaint should also be dismissed, but without prejudice.

**WHEREFORE**, Defendant prays that this Court dismisses Plaintiff's Complaint in its entirety, with costs and disbursements to Defendant, together with such other relief the Court finds to be just and proper.

IT IS HEREBY CERTIFIED that on this same date a copy of this Motion is to be filed with the Court's CM/ECF System, which will provide notice to all counsel of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this _______ day of October, 2014.

***s/Mariela Maestre-Cordero***
Mariela Maestre-Cordero
USDC No. 220302
P.O. Box 11405, San Juan,
Puerto Rico 00922
T./F. (787) 518 0331
E-Mail: maestrecordero@hotmail.com