IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RICO SUN TOURS, INC.<br><br>      Plaintiff,<br><br>      v.<br><br>EDGARD CAPELES VARGAS;<br>RICARDO SERRA CASTILLO;<br>RICARDO RIVAS TORRES;<br>GERMÁN VÁZQUEZ;<br>WILLIAM TORRES RODRIGUEZ;<br>SAN JUAN HAPPY TOURS, CORP;<br>UNITED TOUR GUIDES COOP OF<br>PUERTO RICO;<br>UNIÓN DE TRANSPORTISTAS Y RAMAS<br>ANEXAS, INC.<br><br>      Defendants. | CIVIL NO. 14-cv-1583 (JAG) |

**CONSOLIDATED OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO RULE 12(B)(6) MOTIONS TO DISMISS (DKT. NO. 25, 33 & 39)**

**CASELLAS ALCOVER & BURGOS, P.S.C.**

César T. Alcover, Esq.
Sarika J. Angulo, Esq.
Counsel of Plaintiff  Rico Sun Tours, Inc.
P.O. Box 364924
San Juan, Puerto Rico 00936-4924
Tel.: (787) 756-1400
Fax: (787) 756-1401
Email:  calcover@cabprlaw.com
Email:  sangulo@cabprlaw.com
www.cabprlaw.com

1

**Table of Contents**

Page

I.  INTRODUCTION ......................................................................................................... 7-9

II.  STANDARD OF REVIEW ......................................................................................... 9-12

    A.  APPLICABLE STANDARD FOR MOTIONS TO DISMISS UNDER
        FED.R.CIV.P. 12(B)(6)........................................................................................ 9-11

    B.  APPLICATION OF THE PLAUSIBILITY STANDARD ESPOUSED IN *TWOMBLY*
        IN A SHERMAN ACT, SECTION 1 "CONSPIRACY" ALLEGATION, 15 U.S.C. §1................ 11-12

III.  LAW & ARGUMENT ............................................................................................... 13-33

    A.  RST HAS SUFFICIENTLY STATED A CLAIM UNDER SECTION 1 OF THE
        SHERMAN ACT, 15 U.S.C. § 1. ....................................................................... 13-27

        1. CONSPIRACY CAN BE DEMONSTRATED BY CIRCUMSTANTIAL
           EVIDENCE. ........................................................................................... 13-13

        2. RST'S COMPLAINT PLEADS SUFFICIENT FACTUAL ALLEGATIONS TO
           SUPPORT A PLAUSIBLE INFERENCE OF CONCERTED ACTION AMONG
           CO-DEFENDANTS. .................................................................................. 18-26

    B.  RST HAS SUFFICIENTLY STATED A CLAIM UNDER SECTION 2 OF THE
        SHERMAN ACT, 15 U.S.C. § 2. ...................................................................... 26-29

    C.  RST HAS STANDING TO BRING FORTH A CLAIM UNDER SECTION 1 AND
        SECTION 2 OF THE SHERMAN ANTITRUST ACT, 15 U.S.C. §§1, 2................................ 30-32

    D.  THE COURT MAY CONSIDER EXHIBIT A TO THE COMPLAINT AT THIS
        STAGE........................................................................................................ 32-33

    E.  THIS COURT SHOULD GRANT RST OPPORTUNITY TO CONDUCT
        DISCOVERY AND AMEND THE COMPLAINT SHOULD IT FINDS THE
        ALLEGATIONS FAIL TO STATE A CLAIM UNDER THE SHERMAN ACT. ......................33

      IV.  CONCLUSION ...................................................................................................... 34

## Table of Authorities

**Page**

**Cases**

*American Tobacco Co. v. United States,* 328 U.S. 781, 811 (1946)..............................................27

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 500 (1988).............................17

*Anderson News, L.L.C. v. American Media, Inc.,*
680 F.3d 162, 189-190) (2nd Cir. 2012) ......................................................................................12, 15

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).......................................................................9, 10, 23

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)..........................9, 11, 13, 19, 23, 25, 26, 34

*Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d .................................................................19, 22

*Brown Shoe Co. v. Unites States*, 370 U.S. 294, 324 (1962).........................................................27

*California Dental Ass'n v. FTC*, 526 U.S. 756, 781 (1999) ..........................................................17

*Conley v. Gibson,* 355 U.S. 41, 47 (1957) ....................................................................................9

*Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 699 (1962) .............18, 19

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775, (1984)...............................13

*Dickson v. Microsoft Corp.,* 309 F.3d 193, 205 (4th Cir. 2002).................................................17

*DM Research, Inc. v. Coll of Am. Pathologists,* 170 F.3d 53, 55 (1st Cir. 1999) .........................29

*Evergreen Partnering Group, Inc., v. Pactiv Corp.,*
720 F.3d 33, 45-46 (1st Cir. 2013) .................................................................................12, 14, 34

*Fraser v. Major League Soccer*, 284 F.3d 47, 61-62 (1st Cir. 2002) ............................................27

*García Catalán v. United States,* 734 F.3d 100, 103 (1st Cir. 2013) ...................10, 11, 12, 18, 22

*González v. The Ritz Carlton*, 241 F. Supp. 2d 142....................................................................31, 32

*Grajales v. Puerto Rico Ports Authority*, 682 F. 3d 40, 44 (1st Cir. 2012)..............................10, 32

*Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976) ......................14, 33

*Image Technical Servs. V. Eastman Kodak Co.,* 125 F.3d 1195, 1202 (9th Cir. 1997) ................28

*In re Blood Reagents Antitrust Litig.,* 756 F.Supp. 2d 623, 630-31 (E.D.Pa. 2010) ....................18

*In re Flash Memory Antitrust Litig.,*
643 F. Supp. 2d 1133, 1142, 1148 (N.D.Cal. 2009) ................................................................25, 26

*In re publication Paper Antitrust Litig.,* 690 F.3d 51, 63 (2d. Cir. 2012),
*cert. denied,* 133 S.Ct. 940..........................................................................................................15

*In re Text Messaging Antitrust Litig.,* 630 F.3d 622, 628 (7th Cir. 2010)................................18, 25

*Knuth v. Erie–Crawford Dairy Cooperative Assn.,* 395 F.2d 420, 423 (C.A.3 1968) .................14

*Maloy v. Ballori–Lage,* 744 F.3d 250, 252 (1st Cir. 2014) .......................................................9, 23

*MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.,*
62 F.3d 967, 973 (7th Cir.1995) ....................................................................................................17

*Medina-Velázquez v. Hernández-Gregorat,* 767 F. 3d 103, 105 (1st Cir. 2014) ................9, 11, 23

*Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 761 (1984)..............................................13

*Morales Villalobos v. García Llorens,* 316 F.3d 51, 55 (1st Cir. 2003)...................................30, 31

*NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 926 (1982) ....................................................24

*North Texas Specialty Physicians v. FTC,* 528 F.3d 346, 356 (5th Cir. 2008)..............................17

*Ocasio Hernández v. Fortuño Burset,* 640 F. 3d 1, 7 (1st Cir. 2011) ...............................10, 12, 33

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island,*
692 F.Supp. 52, 69-70 (D.R.I. 1988) .............................................................................................28

*PepsiCo., Inc. v. Coca-Cola Co.,* 315 F.3d 101, 107-108 (2nd Cir. 2002)....................................28

*Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.,*
332 F. 3de 6, 13 (1st Cir. 2003) .............................................................................................11, 33

*Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473 (1962) ...................................14

*Radovich v. National Football League,* 352 U.S. 445, 454 (1957) ................................................14

*Re/Max Int'l v. Realty One,* 173 F.3d 995, 1018-1019 (6th Cir. 1999) ..........................................28

*Robertson v. Sea Pines Real Estate Companies, Inc.,* 679 F.3d 278, 289 (4th Cir. 2012) ............16

*Rodríguez Vives v. Puerto Rico Firefighters Corps of Puerto Rico,*

743 F.3d 278, 283 (1st Cir.2014)........................................................9,

*Rossi v. Standard Roofing, Inc.,* 156 F.3d 452, 465 (3rd Cir. 1998) ...............13

*Schuylkill Energy Resources v. Pennsylvania Power & Light Co.,*
113 F. 3d 405, 417 (3rd Cir. 1997) ...........................................30, 33

*Spectators' Communication Network Inc. v. Colonial Country Club,*
253 F.3d 215, 220 (5th Cir. 2001) ................................................17

*Spirit Airlines v. Northwest Airlines,* 431F.3d 917, 950-951 (6th Cir. 2005)................27

*Starr v. Sony BMG Music Entm't.,* 592 F.3d 314, 325 (2d Cir. 2010),
*cert. denied,* 131 S.Ct. 901 (2011) ..............................................19

*Sterling Merch, Inc. v. Nestle, S.A.,* 656 F.3d 112, 121 (1st Cir. 2011). .......................30

*Technical Res. Serv. v. Dornier Med. Sys.,* 134 F.3d 1458, 1466 (11th Cir. 1998)......................29

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) ......................10

*Todd v. Exxon Corp.,* 275 F.3d 191, 213 (2d Cir. 2001)  ............................17

*Tunica Web Advertising v. Tunica Casino Operators Ass'n, Inc.,*
496 F.3d 403 (5th Cir. 2007) ...................................................14

*U.S. v. Bullis,* 77 F.3d 1553 (7th Cir. 1996) ......................................24

*United States v. E.I. duPont de Nemours & Co.,* 351 U.S. 377, 391 (1956) ..............26

*Verizon Communs. v. Law Offices of Curtis V. Trinko, LLP,*
540 U.S. 398, 407 (2004).......................................................26

*Walker Process Equip. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 177 (1965)....................27

*Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993) ...................................12, 23

*West Penn Allegheny Health System, Inc.,* 627 F.3d 85, 99-100 (3rd Cir. 2010)....................16, 24

**<u>Statutes</u>**

Law No. 113 of July 4, 2011................................................... 32

3 P. Areeda & D. Turner, *Antitrust Law* (1978) ...........................................28

Sherman Antitrust Act, 15 U.S.C. § 1, et seq ........................ 7, 11, 13, 15, 26, 29, 30, 32

**Treatises and Commentators**

Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.). ....................................................... 10

**Rules**

Fed.R.Civ.P. 8(a)(2). .......................................................................................................... 9

Fed.R.Civ.P 12(b)(6)................................................................... 7, 9, 10, 12, 14, 32, 33

Fed.R.Civ.P 15(a) ............................................................................................................. 33

29 C.F.R. §§ 1626.1-1626.19............................................................................................ 32

Puerto Rico Penal Code, Article 240, 33 L.P.R.A. § 5323 ............................................... 22

# I.

## **INTRODUCTION**

In the midst of the worst recession Puerto Rico has experienced in years, it is undisputed that its tourism industry has remained a steady source of revenue to the commonwealth at large. However, Puerto Rico's reputation as a world class tourist destination is in peril due to co-defendants' group boycott that resulted in acts of violence committed in furtherance of a conspiracy whose only purpose was —and still is— to stifle the competition in the island's highly concentrated cruise ship industry, thereby maintaining such industry under their sole control to the exclusion of plaintiff, Rico Sun Tours, Inc. ("RST"). As such, in an attempt to halt co-defendants' illegal practices once and for all, RST lodged a Complaint (Dkt. No. 1) premised on the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, and other local statutes, seeking an injunction and redress of the grievances that co-defendants' monopolistic conduct has caused to both, the cruise ship industry and RST.

Notwithstanding RST's well pleaded Complaint, co-defendants United Tour Guides Coop of Puerto Rico, Mr. Ricardo Serra Castillo and Mr. Ricardo Rivas Torres (collectively "UTG") filed a Partial Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) (Dkt. No. 25) asserting, in a formulaic manner, that RST's allegations fail to state a claim upon which relief is plausible. UGT alleges that RST failed to "allude to specific acts where the Codefendants United Tour Guides Coop of Puerto Rico, Mr. Ricardo Serra Castillo and Mr. Ricardo Rivas Torres could be singled out as conspirators to the alleged scheme." (Dkt. No. 25, ¶ 16 at 5). UTG's motion was followed by San Juan Happy Tours, Corp. ("SJHT") own "Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and for Lack of Subject Matter Jurisdiction" (Dkt. No. 33) wherein it not only regurgitates UGT's arguments, but dismembers RST's allegations in

7

isolation to reach the skewed conclusion that this Honorable Court lacks subject matter jurisdiction over RST's claim. Most recently, William Torres Rodríguez joined in by filing a "Motion to Join Document No.33 in Request for Dismissal and Additional Responsive Pleading" (Dkt. No. 39). Therein, Mr. Torres piggybacks on SJHT's arguments, while contending in a conclusory manner that RST lacks standing to bring forth this claim (Dkt. No. 39 at 5-7) and that it has failed to exhaust administrative proceedings (Dkt. No. 39 at 8-10). Essentially, co-defendants are throwing in the proverbial kitchen-sink full of arguments in the hopes that at least one of their many arguments will persuade this Hon. Court to dismiss the Complaint.

However, a reading of these motions not only demonstrates that the premises upon which each co-defendants anchor each of their arguments are mistaken, but it also shows that co-defendants fail to grasp the basic tenet that, for purposes of a motion to dismiss, ***the facts brought forth in the complaint must be, as a whole, accepted as true.  That is, co-defendants may not challenge, at this stage, the veracity of the facts alleged in the Complaint.*** Obviating this simple tenet, co-defendants mistakenly analyze each allegation individually –instead of as a whole– in order to arrive at the erroneous conclusion that this Hon. Court cannot draw a plausible inference of co-defendant's anticompetitive conduct from the allegations pleaded in the Complaint. They reach this conclusion by resorting to logical fallacy and conveniently overlooking the facts *preceding* the conspiracy, the facts *during the* conspiracy, and the facts *resulting from* the conspiracy, as well as each of their individual roles through these stages.

As RST will demonstrate, the allegations pleaded in the Complaint allow this Honorable Court to draw a plausible inference that but for co-defendants' anticompetitive conduct through a group boycott aimed at preventing RST from providing ground transportation to cruise ship passengers arriving in San Juan —and thereby excluding RST from participating in the San Juan

cruise ship industry altogether—  RST would have provided the service the cruise ship passengers booked and paid for upon their arrival in San Juan on July 30, 2013. Co-defendants cannot escape antitrust liability and each must stand accountable for their role in keeping RST off the market on and before July 30, 2013. Their antitrust transgressions must be tested in discovery and, ultimately, by a jury. Accordingly, this Hon. Court should deny the three motions to dismiss.

## II.

## STANDARD OF REVIEW

### A.  APPLICABLE STANDARD FOR MOTIONS TO DISMISS UNDER FED.R.CIV.P. 12(B)(6).

To survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a plaintiff's complaint must contain "'a short and plain statement of the claim.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (*quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *see also* Fed.R.Civ.P. 8(a)(2). While a complaint need not contain detailed factual allegations, *Rodríguez Vives v. Puerto Rico Firefighters Corps of Puerto Rico,* 743 F.3d 278, 283 (1st Cir.2014), a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555 (internal quotation marks omitted). In assessing a claim's plausibility, the Court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (*citing Twombly,* 550 U.S. at 570); *accord Maloy v. Ballori–Lage,* 744 F.3d 250, 252 (1st Cir. 2014); *see also Medina-Velázquez v. Hernández-Gregorat*, 767 F. 3d 103, 105 (1st Cir. 2014). When reviewing a motion to dismiss, the Court "must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by

reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); *see García Catalán v. United States,* 734 F.3d 100, 103 (1st Cir. 2013) (emphasizing the need to read the complaint as a whole) (internal quotation marks omitted);[1] *Grajales v. Puerto Rico Ports Authority*, 682 F. 3d 40, 44 (1st Cir. 2012)(the court should recite the facts alleged in the complaint and from the documents incorporated by reference into the complaint); *Ocasio Hernández v. Fortuño Burset*, 640 F. 3d 1, 7 (1st Cir. 2011)(the court may supplement its reading of the complaint with information from the documents incorporated into the complaint).   As the First Circuit has explained, "[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. For pleading purposes, circumstantial evidence often suffices to clarify a protean issue." *García Catalán*, 734 F. 3d at 103 (internal quotation marks omitted).

In determining the plausibility of a claim for relief, the Court must be careful not to apply it mechanically.  *García Catalán*, 734 F. 3d at 101.  The plausibility test is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. However, "this context-specific inquiry does not demand 'a high degree of factual specificity.'" *García-Catalán*, 734 F.3d at 103 (internal quotation marks omitted).

Thus, the question on a motion to dismiss under Rule 12(b)(6) is whether in the light most favorable to the plaintiff and with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief. If the answer to the question is in the affirmative, the motion to dismiss must be denied. *Wright & Miller, 5B Fed. Prac. & Proc. Civ.* § 1357 (3d Ed.).  The reason is that "at the pleading stage, the plaintiff need not demonstrate

---

[1]       In *García Catalán*, the First Circuit admonished that with the advent of the new plausibility standard, District Courts had struggled with the implementation of the new pleading standard.  *García-Catalán*, 734 F.3d at 101.  Thus, the First Circuit warned the District Courts to avoid the mechanical application of such standard, so as to avoid the dismissal of otherwise meritorious claims.  *Id*.

that she is likely to prevail, but her claim must suggest "more than a sheer possibility that a defendant has acted unlawfully." *García-Catalán*, 734 F.3d at 102-103 (internal quotation marks omitted).

Further, as the First Circuit has recently stated:

> ***The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint***. Nevertheless, the elements of a prima facie case are relevant to the plausibility assessment, forming "part of the background against which a plausibility determination should be made. In the end, there need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. ***What counts is the cumulative effect of the [complaint's] factual allegations***...Moreover, the court may not disregard properly plead factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable. Indeed, a well-pleaded complaint may proceed...even if a recovery is very remote and unlikely. Ultimately, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint. (internal citations and quotations omitted).

*Medina-Velázquez,* 767 F. 3d at 108-09 (emphasis ours).

**B.  APPLICATION OF THE PLAUSIBILITY STANDARD AS ESPOUSED IN *TWOMBLY* IN A SHERMAN ACT SECTION 1 "CONSPIRACY" ALLEGATION, 15 U.S.C. §1.**

"[I]n antitrust cases, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly."  *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F. 3d 6, 13 (1st Cir. 2003).  In regards to the application of *Twombly's* plausibility test in a Section 1 conspiracy allegation of the Sherman Act, 15 U.S.C. §1, the First Circuit, quoting the Second Circuit, has stated that

> [t]he question at the ***pleading stage*** is not whether there is a plausible *alternative* to the plaintiff's theory; the question is whether there are sufficient factual allegations to make the

> complaint's claim plausible…"[T]here may … be more than one
> plausible interpretation of the defendant's words, gestures, or
> conduct. Consequently, although an innocuous interpretation of the
> defendant's conduct may be plausible, that does not mean that the
> plaintiff's allegation that that conduct was culpable is not also
> plausible…[O]n a Rule 12(b)(6) motion it is not the province of
> the court to dismiss the complaint on the basis of the court's choice
> among plausible alternatives. Assuming that [plaintiff] can adduce
> sufficient evidence to support its factual allegations, the choice
> between or among plausible interpretations of the evidence will be
> a task for the factfinder."

*Evergreen Partnering Group, Inc., v. Pactiv Corp.,* 720 F.3d 33, 45-46 (1st Cir. 2013)(quoting *Anderson News, L.L.C. v. American Media, Inc.,* 680 F.3d 162, 189-190) (2nd Cir. 2012) (emphasis added in original; bold ours).

Accordingly, in this setting, RST moves to strike co-defendants' arguments of counsel stating "facts" not referenced in the Complaint and incapable of judicial notice, as well as all inferences they have made in their favor.  In addition, RST objects to co-defendants' attempts to re-characterize RST's allegations as false. The Court should also interpret the agreements referenced in the pleading and attached to the Complaint in the light most favorable to RST. *See Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). "At these early stages in the litigation, the court has no substantiated basis in the record to credit a defendant's counter-allegations." *Evergreen Partnering Group,* 720 F.3d at 45 (reversing order granting Rule 12(b)(6) motion to dismiss); *Ocasio-Hernández,* 640 F. 3d at 14-15 (applying Iqbal and Twombly and vacating grant of motion to dismiss); *García Catalán,* 734 F. 3d at 102-103 (reversing grant of the motion to dismiss when the district court applied the plausibility test mechanically).

## III.

## LAW & ARGUMENT

### A. RST HAS SUFFICIENTLY STATED A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1.

Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1, provides that: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." As such, it prohibits "only restraints affected by a contract, combination or conspiracy." *Twombly,* 550 U.S. at 553 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775, (1984)). From it follows the corollary that a necessary ingredient of any section 1 claim is the showing of *concerted action* of the part of the defendants. *See Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 761 (1984). To establish concerted action, the plaintiff must present "evidence that reasonably tends to prove that the [defendants or conspirators] had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Id.* at 753. In other words, "[t]here must be evidence that tends to exclude the possibility of independent action." *Id.*

### 1. CONSPIRACY CAN BE DEMONSTRATED BY CIRCUMSTANTIAL EVIDENCE.

Unlike co-defendants, but particularly UTG's erroneous contention,

> [a] plaintiff may utilize either direct or circumstantial evidence in order to make out the element of concerted action. While direct evidence, the proverbial 'smoking gun' is generally the most compelling means by which a plaintiff can make out his or her claim, it is also frequently difficult for antitrust plaintiff to come by. Thus, plaintiffs have been permitted to rely solely on circumstantial evidence (and the reasonable inferences that may be drawn therefrom) to prove a conspiracy.

*Rossi v. Standard Roofing, Inc.,* 156 F.3d 452, 465 (3rd Cir. 1998)

As the Supreme Court has observed, "in antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' ... dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976) (*quoting Poller v. Columbia Broadcasting System, Inc*., 368 U.S. 464, 473 (1962); *see also Knuth v. Erie–Crawford Dairy Cooperative Assn*., 395 F.2d 420, 423 (C.A.3 1968) ("The 'liberal' approach to the consideration of antitrust complaints is important because inherent in such an action is the fact that all the details and specific facts relied upon cannot properly be set forth as part of the pleadings"). Moreover, in enacting the Sherman Act Congress intended to encourage, rather than discourage, private enforcement of the law.  This is evidenced by the fact that the Sherman Act authorizes the recovery of treble damages and attorney's fees for successful plaintiffs. *See Radovich v. National Football League,* 352 U.S. 445, 454 (1957) ("Congress itself has placed the private antitrust litigant in a most favorable position .... In the face of such a policy this Court should not add requirements to burden the private litigant beyond what is specifically set forth by Congress in those laws"). It is therefore important in antitrust cases for District Courts to resist the urge to engage in armchair economics at the pleading stage by granting Fed.R.Civ.P. 12(b)(6) motions in the face of a meritorious claim.

With this in mind, courts have consistently held that conspiratorial conduct may be shown though circumstantial evidence. For antitrust analysis purposes, direct evidence of concerted action is that which explicitly refers to an understanding between the alleged conspirators, while circumstantial evidence requires additional inferences in order to support such claim. *Tunica Web Advertising v. Tunica Casino Operators Ass'n, Inc.,* 496 F.3d 403 (5th Cir. 2007); *see e.g., Evergreen Partnering Group, Inc. v. Pactiv Corp.,* 720 F.3d at 46

(Reversing dismissal of a complaint claiming that manufacturers conspired with their trade association to boycott the plaintiff's new manufacturing system where the ***factual allegations stated a plausible boycott claim, including parallel refusals following an association meeting at which members were urged to not deal with the plaintiff, the abrupt loss of support from one of the defendants following the meeting, incriminating statements indicating coercive pressure on the others by the industry***); *Anderson News, LLC,* 680 F.3d 162, 184 (2d Cir. 2012) (Reversing dismissal of a Sherman Act section 1 boycott complaint where ***detailed allegations of suspect meetings, emails, and other communications between named executives of the defendants in which the claimed conspiracy to boycott the plaintiff was allegedly discussed and put in place, together with a sudden halt in sales to the plaintiff shortly after the communications occurred, provided the "nonconclusory" factual context needed to plead a plausible conspiracy***.) (emphasis ours); *In re publication Paper Antitrust Litig.*, 690 F.3d 51, 63 (2d. Cir. 2012), *cert. denied,* 133 S.Ct. 940, 184 L.Ed. 2d 725 (2013) (Reversing summary judgment for the defendants in a case alleging a horizontal conspiracy to fix and raise the price of specialty printing paper, where the district court had imposed an overly heavy burden on the plaintiffs of presenting sufficient evidence to "dispel" the possibility of independent parallel pricing. Even if the defendants were correct that lower-level employees responsible for day-today pricing decisions tended to simply follow the industry price leader, ***a triable issue of the claimed conspiracy was raised by evidence of suspect price increases despite excess industry capacity, frequent meetings and telephone contacts between high level executives of the defendants, and a co-conspirator's incriminating admissions.*** "Requiring a plaintiff to 'exclude' or 'dispel' the possibility of independent action places too heavy a burden on the plaintiff. Rather, if a plaintiff relies on ambiguous evidence to prove its claim, the existence of a

conspiracy must be a reasonable inference that the jury could draw from that evidence; it need not be the sole inference.") (emphasis ours); *Robertson v. Sea Pines Real Estate Companies, Inc.,* 679 F.3d 278, 289 (4th Cir. 2012) (A complaint claiming that a multiple listing service had conspired with traditional real estate brokers to boycott lower-cost brokers by adopting membership rules designed to exclude them from membership in the service and, hence, access to essential listings data did not require specific allegations of the "times and locations of...allegedly conspiratorial meetings," where the complaint alleged "direct evidence" of concerted action in the form of the challenged membership rules themselves. "Circumstantial evidence sufficient to 'suggest[] a preceding agreement,'...is thus superfluous in light of the direct evidence in the bylaws of the agreement itself.")(emphasis ours); *West Penn Allegheny Health System, Inc.,* 627 F.3d 85, 99-100 (3rd Cir. 2010) (Reversing dismissal of Sherman Act claims that the dominant hospital in the Pittsburg area conspired with the dominant provider of health care insurance to protect each other from competition in their respective trade areas, *where the existence of conspiracy was supported by allegations of damaging admissions by one of the defendant's executives and other evidence.* "An agreement for purposes of section 1 and 2 exists when there is a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme. *A plaintiff may plead an agreement by alleging direct or circumstantial evidence of an agreement, a court need not go no further on the question whether an agreement has been adequately pled*.") (internal citation omitted) (emphasis ours).

Accordingly, a broad range of evidence may be utilized to establish concerted action if it supports the conclusion that the defendants entered into an actual "agreement" or "common scheme" to restrain trade. In fact, when such evidence is proffered, even reluctant co-

conspirators can still be held liable as participants in a conspiracy if the evidence shows that they knowingly acquiesced and participated in the scheme. An "involuntary" agreement is still generally viewed as concerted conduct, rather than unilateral, for antitrust purposes. *See e.g., MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.,* 62 F.3d 967, 973 (7th Cir.1995) ("[T]he 'combination or conspiracy' element of Section 1 is not negated by the fact that one or more of the coconspirators acted unwillingly, reluctantly, or only in response to coercion."); *Spectators' Communication Network Inc. v. Colonial Country Club,* 253 F.3d 215, 220 (5th Cir. 2001) ("even reluctant participants have been held liable for conspiracy."); *Dickson v. Microsoft Corp.,* 309 F.3d 193, 205 (4th Cir. 2002) ("[T]he co-conspirators need not share the same motive or goal; it is sufficient to allege that the coconspirators 'acquiesced in an illegal scheme.'") (internal citation omitted).

Further, the actions of a trade association or other group may also satisfy Section 1's concerted action requirement. *See e.g., California Dental Ass'n v. FTC*, 526 U.S. 756, 781 (1999) (Remanding for fuller consideration of procompetitive and anticompetitive effects of association's challenged restraints on its members' advertisements that made claims of price and quality). However, it is only when the members of a trade association act together, and the negative effects of those actions harm consumers that trade association membership may support the conspiracy element of a Section 1 violation. *See e.g., Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 500 (1988) ("[T]rade and standard-setting associations [are] routinely treated as continuing conspiracies of their members."); *Todd v. Exxon Corp.,* 275 F.3d 191, 213 (2d Cir. 2001) (Sotomayor, J.) (Trade association meetings, while not inherently unlawful, "have the potential to enhance the anticompetitive effects and 'likelihood of…uniformity' caused by information exchange"); *North Texas Specialty Physicians v. FTC*, 528 F.3d 346, 356 (5th Cir.

17

2008) ("When an organization is controlled by a group of competitors, it is considered to be a conspiracy of its members."); *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010) ("Of note is the allegation in the complaint that the defendants belonged to a trade association and exchanged price information directly at association meetings.").

While RST agrees that "mere membership" is not sufficient to support liability, as the cases discussed above show, at the pleading stage membership is enough in instances where: (1) a plaintiff has alleged a trade association that groups competitors; (2) the trade association agrees upon a strategy to exclude a competitor, who is not a member of the association, to the detriment of the entire industry and the competitor himself; and (3) their members engage in overt acts in furtherance of such agreement to exclude the non-member. Taking these requisites into consideration, it is evident that RST has fully met its burden to plead factual allegations that reasonably support a plausible inference of conspiratorial conduct.

### 2. RST'S COMPLAINT PLEADS SUFFICIENT FACTUAL ALLEGATIONS TO SUPPORT A PLAUSIBLE INFERENCE OF CONCERTED ACTION AMONG CO-DEFENDANTS.

Notwithstanding the well-settled legal principles concerning a well-pleaded complaint under antitrust law, co-defendants' motions "attempt[] to dismember plaintiffs' Complaint in order to show how each allegation, in isolation, fails to sufficiently aver plausibility..." *In re Blood Reagents Antitrust Litig.,* 756 F.Supp. 2d 623, 630-31 (E.D.Pa. 2010). Co-defendants' approach is clearly mistaken since it is well-settled that ***"the allegations in the Complaint must be viewed as a whole."*** *Id*. at 330-631 (emphasis ours); *García Catalán*, 734 F. 3d at 103. This rule is in alignment with the Supreme Court's mandate that antitrust "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Continental Ore Co. v. Union Carbide &*

*Carbon Corp.,* 370 U.S. 690, 699 (1962). Drawing support from an erroneous heightened pleading standard, co-defendants have isolated each of RST's allegations and, after discussing each allegation individually, they concluded that RST has failed to state a Section 1 claim against them. Evidently, co-defendants' analysis is flawed.

According to co-defendants, but UGT particularly, RST's Complaint "never allude[s] to specific acts where the Codefendants United Tour Guides Coop of Puerto Rico, Mr. Ricardo Serra Castillo and Mr. Ricardo Rivas Torres could be singled out as conspirators to the alleged scheme." (Dkt. No. 25, ¶ 16 at 5). This is simply not true. As stated previously, this suggestion is in disagreement with *Twombly's* express declaration that the Court was not requiring a heightened pleading standard for antitrust cases. *See Twombly,* 550 U.S. at 569 n. 14 ("[W]e do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9..."). UTG's contention is, thus, at odds with *Twombly*. In fact, the Second Circuit has rejected the same argument UTG is advancing, stating that "Defendants next argue that *Twombly* requires that a plaintiff identify the specific time, place, or person related to each conspiracy allegation. This is also incorrect." *Starr v. Sony BMG Music Entm't.,* 592 F.3d 314, 325 (2d Cir. 2010), *cert. denied*, 131 S.Ct. 901 (2011); *see also Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d at 632 ("*Twombly* increased the burden antitrust plaintiffs must bear in order to satisfy Rule 8(a). However, it does not require 'heightened fact pleading of specifics' and expressly disclaimed an approach focusing on the probability that a complaint's allegations will ultimately be vindicated.") Thus, UTG's reliance on *Twombly* to support its alleged heightened pleading standard is misplaced.

While *Twombly* does not require a heightened pleading standard, RST's Complaint meets, and exceeds, such standard because the allegations therein provide co-defendants with

ample notice of what they must defend against. In fact, UTG and co-defendant Edgard Capeles Vargas, did defend themselves as they both filed their answers to the complaint. (Dkt. No. 29 & 41). For instance, RST has plead:

(1) the **_"who,"_** which expressly names each co-defendants (Dkt. No. 1, ¶¶ 8-10 at 4-5, ¶¶ 13-17 at 6-7);

(2) the **_"what,"_** which refers to the agreement reached by co-defendants through concerted action to not allow RST, a competitor of co-defendants, to access to the San Juan port while also agreeing to go on strike at the pier in front of dock 4 upon Disney Fantasy cruise ship's arrival on July 30, 2013 and not allow cruise ship passengers to board RST's vehicles. (*Id.,* ¶ 44-71at 13-19);

(3) the **_"where,"_** the conspiracy was initially discussed through text messaging and then agreed upon during an assembly meeting held on the "navy frontier." The conspiracy was finally consummated at the pier upon the cruise ship's arrival on the day and time agreed upon by the co-defendants and/or conspirators. (*Id.*);

(4) the **_"when,"_** the conspiracy was discussed and agreed upon on or about July 29, 2013 (*Id.,* ¶ 44 at 13-14; ¶ 49 at 14; ¶ 51 at 15) and it was consummated the morning of July 30, 2013 as agreed upon by co-defendants and/or conspirators. (*Id.*, at ¶¶ 61-71 at 17-19);

(5) the **_"how,"_** the conspiracy was discussed and agreed upon through text messaging, and at an assembly meeting. *Id.* It was finally consummated at the pier on the day agreed upon by co-defendants and/or conspirators when, among other things, upon the arrival of the Disney Fantasy cruise ship co-defendants, particularly, Ricardo Rivas Torres, Ricardo Serra Castillo, Edgard Capeles Vargas and Germán Vázquez began shouting aloud that RST allegedly did not have the proper permits from the Puerto Rico Tourism Company to provide ground transportation to the passengers aboard the Disney Fantasy upon their arrival (*Id.,* ¶ 65 at 18). Right after, co-defendants Rivas, Serra and Capeles blocked the pier with their vehicles to prevent Disney Fantasy passengers from boarding RST's vehicles. (*Id.,* ¶ 67 at 18), while threatening RST's

subcontracted operators and stating that if they moved their vehicles and provided ground transportation to the passengers, they would break their vehicles' windows. (*Id.*, ¶ 68 at 18). At that point, the Puerto Rico Police had to intervene to contain co-defendants' violent acts. (*Id.*, ¶ 69 at 18). As a result of co-defendants violent conduct criminal charges were pressed against them. (*Id.*, ¶¶ 80-81 at 21); and

(6) the "***why,***" the conspiracy was agreed upon in order to exclude RST from providing ground transportation to tourists arriving in cruise ships to the San Juan port, thereby maintaining the market share solely between UTG and SJHT. (*Id.*, ¶ 47 at 14; ¶ 55 at 15-16; ¶ 56 at 16; ¶ 58 at 17).

As demonstrated, co-defendants' actions, in context with the remaining allegations of the Complaint, provide sufficient support to plausibly infer that each co-defendant was a co-conspirator with the remaining defendants. Nevertheless, co-defendants, expressly UTG, maintain that RST has failed to pled "specific facts where [UTG] could be singled out as conspirators to the alleged scheme." (Dkt. No. 25, ¶ 16 at 5). It also avers that the allegations contained in paragraphs 57 and 58 of the Complaint regarding the admissions of co-defendant William Torres[2] are merely opinions (Dkt. No. 25, ¶ 17 and ¶ 18 at 6) and that in the "texts messages transcriptions included as Exhibit 1 of the Complaint there is an absolute absence of mention or reference whatsoever to codefendants in any capacity or undertaking." (Dkt. No. 25, ¶ 19 at 6). Certainly, UTG is cherry-picking allegations as it sees fit and is taking them out of context in an unsuccessful attempt to reach its own conclusion that RST has failed to plead sufficient facts that may plausibly infer that a conspiracy amongst co-defendants was not only

---

[2]    Co-defendant William Torres is the president of San Juan Happy Tours. (Dkt. No. 1, ¶14 at 6). Upon information and belief, Mr. Torres, at the behest of Mr. Germán Vázquez, who is the president of the trade union known as *Unión de Transportistas y Ramas Anexas* (Dkt. No. 1, ¶13 at 6) informed Raymond Ortíz of RST that the San Juan port belonged to UTG and SJHT alone and that none of them will allow any other company, including RST, to access the San Juan port. (Dkt. No. 25, ¶ 17 and 18 at 6).

afoot, but that was consummated, all this in contravention of the longstanding principle that ***"the allegations in the Complaint must be viewed as a whole."*** *Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d at 630-631 (emphasis ours); *García Catalán*, 734 F. 3d at 103.

Unlike UTG's mistaken assertions, RST did not only plead sufficient facts from which a plausible inference of conspiracy can be drawn, but it also pleaded enough facts showing that co-defendants engaged in parallel conduct. But, assuming for the sake of argument that RST did not –which RST categorically denies– a conspiracy and anticompetitive conduct by co-defendants was well plead in the Complaint because as UTG admitted in its Answer to the Complaint (Dkt. No. 29), it did engage in anticompetitive conduct because UTG expressly conceded that: (1) both Mr. Ricardo Serra and Mr. Ricardo Rivas were at the docks on July 30, 20143 (*Id.,* ¶ 52 at 6); (2) that they, indeed, engaged in a strike (*Id.,* ¶ 53 at 6); (3) that they did park their vehicles at the dock (*Id.,* ¶ 55 at 7); (4) that they were arrested by the police and charged with the crime of sabotage of essential services as codified in the Puerto Rico Penal Code under Article 240, 33 L.P.R.A. § 5323 (*Id.,* ¶ 68 at 8); and, most compelling of all, (5) that ***"the individual Defendants utilized San Juan Happy Tours, United Tour Guides Coop of Puerto Rico and Unión de Transportistas y Ramas Anexas as their conduits through which they carried out the illegal conspiracy and horizontal boycott to harm RST and the relevant market."*** (*Id.,* ¶ 8 at 2) (Emphasis ours). Further, co-defendant Edgard Capeles Vargas also admitted the same allegation in his Answer to the Complaint. (Dkt. No. 41, ¶ 72 at 8). These admissions ***unequivocally establish,*** without a shadow of a doubt, that co-defendants engaged in a concerted action and carried out overt acts in furtherance of an anticompetitive conspiracy to stifle the competition in the San Juan's cruise ship industry by keeping RST off the market with the specific intent to maintain monopolistic control over it.

While co-defendants are now attempting to engage in damage control in order to undermine the active role each played in the conspiracy, the reasons they have advanced — particularly UTG— to establish independent conduct fall short. UTG states that the reason why Ricardo Serra Castillo and Ricardo Rivas Torres were at the docks on July 30, 2013 was to receive passengers from the cruise ship Explorer of the Seas, yet it failed to proffer any evidence substantiating this assertion. (Dkt. No. 29, ¶ 52 at 6). If UTG wished to dismiss the Complaint by offering a conflicting version of the facts, it should have filed a motion for summary judgment supported by sworn statements.  However, at this pleading stage, UTG may not challenge RST's factual version since they are obliged to accept them as true. *See Ashcroft,* 556 U.S. at 678; *Twombly,* 550 U.S. at 570; *Ballori–Lage,* 744 F.3d at 252; *Hernández Gregorat*, 767 F. 3d at 105. Consequently, RST moves to strike defendants' arguments of counsel stating "facts" not referenced in the Complaint, as well as all inferences they have made in their favor. The Court should also interpret the exhibits referenced in the pleadings and attached to the Complaint in the light most favorable to RST. *See Watterson v. Page,* 987 F.2d 1, 3 (1ˢᵗ Cir. 1993).

Likewise, UTG tries to divert this Court's attention from the fact that while Ricardo Serra Castillo and Mr. Ricardo Rivas Torres may have ultimately pleaded guilty to the crime of obstruction of justice (Dkt. No. 29, ¶ 70 at 8), the truth of the matter is that they were charged with the crime of sabotage of essential services (*Id.,* ¶ 68 at 8). UTG tries to underplay the arrests as a result of Ricardo Serra Castillo and Ricardo Rivas Torres violent acts by claiming that the "manifestations…by Codefendants at the piers is the exercise of the First Amendment rights under the U.S. Constitution." (Dkt. No. 25, ¶ 20 at 6-7). Clearly, UTG's contention is farfetched since the police do not arrest people for protesting peacefully; they only do so when there is reasonable suspicion that a crime is or was afoot. As such, UGT cannot claim First Amendment

23

protection since violence nor illegal acts are protected by this amendment. *See NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 926 (1982). Regardless of the crime to which they pled guilty, the truth of the matter is that both Rivas and Serra admitted to have been present at the San Juan pier 4 and to having participated –*jointly*– in the events that prevented RST from servicing the Disney ship on July 30, 2013.

Now, assuming for the sake of argument that UTG itself did not engage in any conspiracy —which RST once again denies since it has pleaded sufficient factual allegations to plausibly draw such inference— UTG is nevertheless imputed conspiratorial conduct through the damaging admission of Mr. William Torres, regarding UTG and SJHT's intention to maintain the control of the San Juan cruise ship industry. *See Complaint* Dkt. No.1, ¶¶ 56-58. *West Penn Allegheny Health System, Inc.,* 627 F.3d 85, 99-100 (3rd Cir. 2010) (the existence of conspiracy was supported by allegations of damaging admissions by one of the defendant's executives and other evidence). The only way in which UTG could be deemed not to have been involved in the conspiracy would be if it had withdrawn from the conspiracy. A withdrawal occurs when, a defendant ceases his activity in the conspiracy and takes an affirmative act to defeat or disavow the conspiracy's purpose, either by making a full confession to the authorities or by communicating his withdrawal in a manner reasonably articulated to inform his co-conspirators. *U.S. v. Bullis,* 77 F.3d 1553 (7th Cir. 1996) (an individual did not effectively withdraw from a bid rigging conspiracy by leaving his former employer following an internal company investigation into his conduct). As the allegations in the Complaint state, none of the co-defendants withdrew since they all engaged in overt acts in furtherance of the conspiracy to the point that the conspiracy was fully achieved on July 30, 2013.

Further, as stated before, a conspiracy can also be inferred from membership in a trade

association. In fact, Judge Posner recently found membership in a trade association noteworthy in reversing a district court that dismissed a Section 1 claim on *Twombly* grounds. *In re Text Messaging Antitrust Litig.,* 630 F.3d 622, 628-29 (7th Cir.2010)(This fact, along with the highly concentrated market (four sellers that sold 90 percent of services) and alleged price increases in the face of falling costs, allowed the plaintiffs' complaint to withstand the defendants' motion to dismiss.).   Like in *In re Text Messaging Antitrust Litig*, RST has alleged: (1) a highly concentrated market with high entry barriers (UTG and SJHT control the ground transportation provided to cruise ship passengers arriving to the San Juan port);[3] (2) membership and/or active involvement in a trade association by co-defendants because, upon information and belief, the president of the trade known as *Unión de Transportistas y Ramas Anexas*, Germán Vázquez, convened the assembly meeting during which the concerted action to exclude RST was agreed upon by those who were in attendance, whom, presumably, are members or have an active involvement in the union; and (3) identified specific facts describing co-codefendants overt acts in furtherance of and in consummation of the conspiracy on July 30, 2013. These facts align with those that Judge Posner found "sufficiently plausible." *Id.* at 629.

Similarly, *In re Flash Memory Antitrust Litig.,* 643 F. Supp. 2d 1133, 1142, 1148 (N.D.Cal. 2009) a California district court found these allegations sufficiently plausible to infer conspiracy: (1) allegations of which specific defendants were directly involved in the conspiracy;

---

[3]      In an attempt to yet again distract this Court's attention from the real issue, UTG mistakenly states by conveniently quoting, yet distorting RST's allegations in paragraphs 30 through 32 of the Complaint (Dkt. No. 1, ¶ ¶ 30-32 at 10-11) by stating that it is governmental action and not co-defendants anticompetitive conduct that which impedes the entrance of new competitors. To set the record straight, in paragraphs 30 through 32 RST described the process through which every operator interested in obtaining a franchise from the Puerto Rico Tourism Company to provide ground transportation must go through. The truth of the matter is that while it is a lengthy bureaucratic process, RST did obtain such franchise and was duly authorized to act as an operator, yet it has been hindered from acting as such by co-defendants because, as the Complaint alleges, they have systematically engaged in anticompetitive conduct to keep RST off the market.

(2) allegations of the time frame of the conspiracy; (3) allegations that output was reduced following meetings of the defendants; (4) the marketplace was conducive to conspiracy because of dominance by a few entities and high entry barriers; and (5) *the defendants belonged to the same trade association*. The district court found that "[c]outs addressing analogous pleadings have concluded that these types of conspiracy allegations are sufficient to meet the pleading standards of *Twombly*." *Id.* at 1142. Like in *In re Flash Memory Antitrust Litig, supra*, RST has alleged: (1) the players involved in the conspiracy, (2) when the conspiracy occurred, (3) the specific actions consistent with an agreement followed by the alleged agreement, and (4) overt acts of violence in furtherance of such agreement which, as a result, affected the entire industry, its consumers, and RST. Accordingly, RST's allegations give rise to a plausible inference of a conspiracy amongst co-defendants.

### B. RST HAS SUFFICIENTLY STATED A CLAIM UNDER SECTION 2 OF THE SHERMAN ACT, 15 U.S.C. § 2.

Section 2 of the Sherman Acts, 15 U.S.C. § 2, in pertinent, states that: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony…" To form a claim under Section 2, the complaint must contain sufficient factual allegations tending to demonstrate that the defendant engaged in monopolistic behavior by showing that the *defendant possesses monopoly power* and has acquired, enhanced, or maintained that power by the use of *exclusionary conduct*. *Verizon Communs. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 407 (2004).   Monopoly power has traditionally been defined as "the power to control prices or exclude competition." *United States v. E.I. duPont de Nemours & Co.,* 351 U.S. 377, 391 (1956).   The material consideration in determining whether a monopoly exists is whether the power to raise prices and exclude the

competition whenever it is desired to do so exists. *American Tobacco Co. v. United States,* 328 U.S. 781, 811 (1946). To determine whether monopoly power exists, the relevant market challenged must be defined because "[w]ithout a definition of that market, there is no way to measure [a defendant's] ability to lessen or destroy competition." *Walker Process Equip. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 177 (1965); *see e.g., Fraser v. Major League Soccer*, 284 F.3d 47, 61-62 (1st Cir. 2002) ("the only market alleged by the players was rejected by the jury; and this dooms the players' section 2 claims regardless of which practice…is alleged to satisfy the exclusionary act element of the cause of action."). A relevant market has both product and geographic dimensions. *Brown Shoe Co. v. Unites States*, 370 U.S. 294, 324 (1962) (explaining relevant market has two dimensions: relevant product market and relevant geographic market as area of effective competition determined by reference to section of the country.).

A reading of Section 5 of RST's Complaint titled "The Relevant Geographic Market and Product Market", (Dkt. No. 1, ¶¶ 33-34 at 11-12), shows that RST has duly identified both the relevant product and the relevant market. With regards to the relevant geographic market, RST identified it as "the San Juan port where passenger cruise ships arrive." *Id.,* ¶ 33 at 11.  As to the relevant product, RST defined it as "offshore excursions and tours offered by duly licenses Operators to the cruise ship passengers arriving at the San Juan port." *Id.*, ¶ 34 at 12.

Now, monopoly power can be proven by direct evidence of the actual exercise of control over prices in the relevant market and/or the actual *exclusion of competition from the relevant market. See e.g., American Tobacco Co. v. United States*, 328 U.S. 781, 789 (1946) (exclusion of some competitors supported jury's monopolization finding); *Spirit Airlines v. Northwest Airlines,* 431F.3d 917, 950-951 (6th Cir. 2005) (reversing summary judgment for defendant because evidence of output reduction and price increases following plaintiff's exit from market could

show monopoly power); *Re/Max Int'l v. Realty One*, 173 F.3d 995, 1018-1019 (6th Cir. 1999) ("[A]n antitrust plaintiff is not required to rely on indirect evidence of a defendant's monopoly power, such as high market share within a defined market, when there is direct evidence that the defendant has actually set prices"); *Image Technical Servs. V. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("Market power can be proven by either direct or circumstantial evidence."). However, because direct evidence of control or exclusion is seldom available, courts generally determine whether monopoly power exists by reviewing indirect (or circumstantial) evidence of the defendant's ability to control prices or exclude competition. *See e.g., PepsiCo., Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107-108 (2nd Cir. 2002) (circumstantial evidence of monopoly power may be found through a market structure analysis –possession of dominant share of relevant market protected by entry barriers.)

> What is anti-competitive activity is not a matter that has been clearly defined. There are some significant signposts along the way, but the route is not so clearly marked that departures are unavoidable. It is blandly stated that "[t]he use of monopoly power, however, lawfully acquired, to foreclose competition, to gain a competitive advantage, or to destroy a competitor, is unlawful under the Sherman Act." But what is the anticompetitive behavior which must be condemned? Theorists have not done much to illuminate the essential elements. Thus, *Areeda*[4] talks in terms of exclusionary conduct not competitive on the merits and not more restraint than reasonably necessary to maintain competition. Courts have adopted Areeda's definition of exclusionary conduct which includes "behavior that not only (1) tends to impair the opportunities of rivals, but also (2) either does not further competition on the merits or does so in an unnecessarily restrictive way."

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island*, 692 F.Supp. 52, 69-70 (D.R.I. 1988) (internal citations omitted).

In light of this, "[a] defendant may avoid liability by showing a legitimate business

---

[4]    *Id.,* referring to 3 P. Areeda & D. Turner, *Antitrust Law* (1978).

justification for the conduct." *Technical Res. Serv. v. Dornier Med. Sys.,* 134 F.3d 1458, 1466 (11th Cir. 1998).

A reading of RST's Complaint shows that it did set forth sufficient facts that will enable this Court to draw a plausible inference of co-defendants' monopoly through anticompetitive and exclusionary conduct RST has pleaded: (1) the relevant market and product upon which co-defendants exercise anticompetitive and monopolistic control (Dkt. No. 1, ¶¶ 33-34 at 11-12); (2) how long co-defendants have exercised —and continue to exercise— such anticompetitive and monopolistic control (*Id.,* ¶ 78 at 20); (3) the reasons co-defendants have engaged —and continue engaging— in such anticompetitive and exclusionary conduct (*Id.,* ¶¶ 1-2 at 1-3); (4) the parties engaged in such anticompetitive and exclusionary conduct (*Id.,* ¶¶ 8-17 at 4-7); (5) the victims of such anticompetitive and exclusionary conduct (*Id.,*¶1 at 1-2; ¶ 79 at 21); and (6) the means by which such anticompetitive and exclusionary conduct has been conducted and achieved (*Id.,* ¶¶ 44-79 at 13-21). Further, co-defendants motions are silent as to whether there was a legitimate business justification for their exclusionary conduct. The reality is that no such justification exists because there is never a justification for taking the law in your own hands. Under applicable law, co-defendants may not avoid liability. *Technical Res. Serv.,* 134 F.3d 1458, 1466. Thus, because RST has advanced factual allegations that, on its face, are sufficient to support a reasonable inference of co-defendants violation of Section 2, and, most importantly, because at the pleading stage RST has not "yet had the opportunity to conduct discovery," *DM Research, Inc. v. Coll of Am. Pathologists,* 170 F.3d 53, 55 (1st Cir. 1999), co-defendants' motion to dismiss based upon RST's purported failure to state a claim under Section 2 of the Sherman Antitrust Act, 15 U.S.C. §2, should be dismissed.

### C. RST HAS STANDING TO BRING FORTH A CLAIM UNDER SECTION 1 AND SECTION 2 OF THE SHERMAN ANTITRUST ACT, 15 U.S.C. §§1, 2.

"[T]he existence of antitrust injury in not typically resolved through motions to dismiss." *Schuylkill Energy Resources v. Pennsylvania Power & Light Co*., 113 F. 3d 405, 417 (3rd Cir. 1997). The doctrine of antitrust standing is occasionally used to describe but-for causation and perhaps more often to exclude indirectly injured parties who have suffered actual injury but as a result of violations that directly injured intermediate entities. *Morales Villalobos v. García Llorens,* 316 F.3d 51, 55 (1st Cir. 2003) (internal citations omitted). "Perhaps the most common use of the phrase is to describe cases where there is actual injury from an antitrust violation but the impact on the would-be plaintiff results from what closer analysis reveals to be a pro-competitive transaction. *Id.* at 55 (citation omitted). Thus, "[e]very antitrust plaintiff must show that it has sustained antitrust injury." *Sterling Merch, Inc. v. Nestle, S.A.*, 656 F.3d 112, 121 (1st Cir. 2011). An antitrust injury is "injury of the type of the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* at 121 (citation omitted).

Co-defendants attack RST's alleged lack of standing through a ludicrous premise. In a conclusory manner, they aver that RST lacks standing because "even if [RST's allegation that William Torres] 'blocked the center of the pier'…were true (that co-defendant blocked the center of the pier), RST lacks standing to raise the legal rights that belong *exclusively* in this case to the Puerto Rico Ports Authority, only proprietor and administrator of Dock 4 of the San Juan Port." (Dkt. No. 39 at 5). In no way, shape or form is RST claiming ownership of the pier; RST was setting forth the facts surrounding the conspiracy and the overt acts in furtherance thereof. RST allegation goes to demonstrate that a conspiracy was not only agreed upon, but that it was achieved because the main purpose of it was to preclude RST from providing ground transportation to the passengers of the Disney cruise ship. By co-defendants blocking the

entrance, they prevented RST from picking up the passengers, which was the main goal of the conspiracy and a direct result of co-defendants anticompetitive and exclusionary conduct towards RST.

Unlike co-defendants' assertions, a reading of RST's Complaint shows that the allegations contain sufficient factual matter to infer that RST was, indeed, directly injured by the anticompetitive and exclusionary acts committed by co-defendants in furtherance of the conspiracy to drive RST off the market. To assure the safety of the passengers, RST had to cancel the offshore tours and excursions that passengers booked and paid for. (Dkt. No. 1, ¶ 70 at 19). RST thus alleged: (1) but-for causation, (2) a direct injury to RST as a competitor and to the market itself, and, as stated above, (3) no justification for co-defendants acts that would be protected by antitrust laws. *Morales Villalobos,* 316 F.3d 51 (reversing district court's dismissal of plaintiff's complaint for alleged lack of antitrust standing because it was not apparent on a motion to dismiss why plaintiff lacked antitrust standing because she claimed to be directly injured by exclusion from the relevant market, and in consequence of that exclusion and the agreement reached by defendants. "There is thus alleged but-for causation, a direct injury to plaintiff as a supplier and no reason why-if the exclusive dealing or group boycott charges amount to a violation- the injury to her would not be of the kind that antitrust laws are intended to address."). Accordingly, because RST has duly demonstrated an antitrust injury, co-defendants subsequent allegation regarding RST's purported failure to exhaust administrative remedies lacks merits. (Dkt. No. 39 at 8-10). It lacks merits for multiple reasons. First, the case cited in William Torres' motion to dismiss (Dkt. No. 39), *González v. The Ritz Carlton*, 241 F. Supp. 2d 142 is inapposite to Torres' allegations. That case addressed the exhaustion of administrative remedies under the Age Discrimination in Employment Act ("ADEA") which, by

31

design, requires the plaintiff to exhaust administrative remedies before the Equal Employment Opportunity Commission ("EEOC") as a prerequisite to filing suit. *Ritz Carlton,* 241 F. Supp. 2d at 144-145. *See* 29 C.F.R. §§ 1626.1-1626.19. The Sherman Act, conversely, does not contain any such requisite. To the contrary, the statute vests the District Court with original jurisdiction to entertain claims under the Sherman Act. *See* 15 U.S.C. § 15. Second, the mandates of Regulation 8122 are inapplicable since RST's Complaint is not premised on the violations of such regulation, but the Sherman Act and other Puerto Rico statutes. Moreover, according to its own terms, Regulation 8122 regulates the "procedures for requesting and granting incentives to be disbursed from the Ports Authority Fund pursuant to Articles 5(a)(1), 5(a)(2) and 5(a)(4) of the Act [refers to Law No. 113 of July 4, 2011]. *See* Article 1, Section 1.5. The Complaint does not even mention Regulation 8122 much less alleges anything concerning the request, granting or denial of incentives from the Ports Authority Fund. Therefore, Torres' lack of exhaustion remedies argument is meritless.

### D.   THE COURT MAY CONSIDER EXHIBIT A TO THE COMPLAINT AT THIS STAGE.

In an apparent confusion with the applicable standard of review, co-defendants object to the admissibility of RST's Exhibit A to the Complaint for a myriad of reasons ranging from an alleged lack of foundation to lack of authenticity to confusion, among others. (Dkt. No. 33, ¶ 4 at 4-5). These allegations are properly entertained at the summary judgment motions stage. Clearly, co-defendants ignore the long standing principle that in considering a motion to dismiss for failure to state a claim, courts can rely on the complaint, ***written instruments that are attached to the complaint as exhibits***, statements or documents that are incorporated in the complaint by reference and documents on which the complaint heavily relies. *See* Fed.R.Civ.P. 12(b)(6); *Grajales*, 682 F. 3d at 44 (the court should recite the facts alleged in the complaint and

from the documents incorporated by reference into the complaint); *Ocasio Hernández*, 640 F. 3d at 7 (the court may supplement its reading of the complaint with information from the documents incorporated into the complaint). Accordingly, because co-defendants contention is meritless, this Hon. Court should consider Exhibit A (Dkt. No. 1-1 at 1-13) to the Complaint for purposes of determining whether RST has alleged sufficient facts to withstand co-defendants' motions to dismiss.

### E. THIS COURT SHOULD GRANT RST OPPORTUNITY TO CONDUCT DISCOVERY AND AMEND THE COMPLAINT SHOULD IT FINDS THE ALLEGATIONS FAIL TO STATE A CLAIM UNDER THE SHERMAN ACT.

Rule 15(a) of Federal Civil Procedure provides that the court should freely give leave to amend when justice so requires. The courts are in agreement that in different contexts the plaintiff should be allowed to conduct discovery before disposing of an otherwise meritorious claim. *See La Cruz Azul de Puerto Rico, Inc*., 332 F. 3d at 13 ("in antitrust cases, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.'"); *Hospital Building Co.* 425 U.S. at 746 ("in antitrust cases, where 'the proof is largely in the hands of the alleged conspirators, ... dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly."); *Schuylkill Energy Resources v. Pennsylvania Power & Light Co*., 113 F. 3d at 417("the existence of antitrust injury is not typically resolved through motions to dismiss.").

Although RST has persuasively argued that its complaint withstands the co-defendants' 12(b)(6) motions to dismiss, should this court believes that it needs more details to determine whether any element of RST's antitrust claim may plausibly be inferred, RST moves the Court to allow it to conduct discovery and further develop the record with production of documents and deposition testimony.

## IV.

## <u>CONCLUSION</u>

RST's Complaint sets forth independent allegations of actual agreement and monopoly, coupled with direct and circumstantial evidence of parallel action and exclusionary conduct by co-defendants. Evidently, under the plausibility standard espoused in *Twombly* and as applied by the First Circuit in *Evergreen,* RST's allegations render a Section 1 conspiracy and a Section 2 anticompetitive conduct plausible.   The result of co-defendants' conduct has been —and continues to be to this day— RST's exclusion off the cruise ship market in the San Juan port. Because RST has alleged violations of federal antitrust laws, none of the claims set forth in the Complaint should be dismissed. Instead, each should be tested, after discovery and summary judgment and, ultimately, by trial by jury.

WHEREFORE, RST requests an Order **<u>denying</u>** co-defendants motions to dismiss. (Dkt. No. 25, 33 & 39).

CERTIFICATION: An electronic copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of this filing to opposing counsel of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 27th day of October, 2014.

**CASELLAS ALCOVER & BURGOS, P.S.C.**
P.O. Box 364924
San Juan, Puerto Rico 00936-4924
Tel: (787) 756-1400
Fax: (787) 756-1401

*/s/  César T. Alcover Acosta, Esq.*                    */s/ Sarika J. Angulo Velázquez*
CÉSAR T. ALCOVER                                        SARIKA J. ANGULO
USDC-PR 204311                                          USDC-PR 230502
Email: calcover@cabprlaw.com                            Email:sangulo@cabprlaw.com